JUDGE PACOLD

MAGISTRATE JUDGE HOLLEB HOTALING



FILED

2/14/2024

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MCP

RANDOM CAT 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. |
| v. | ) | |
| | ) | Violation: Title 18, United States Code, |
| MYKOLA DATKUN | ) | Section 1028(f) 24CR82 |
| | ) | |

The ACTING UNITED STATES ATTORNEY charges:

1.      At times material to this information:

a.      Defendant MYKOLA DATKUN owned and operated Maximum Services, based in Island Lake, Illinois.

b.      An Illinois Commercial Driver's License ("CDL") allowed for an individual to operate commercial vehicles and tow specified weights to be determined by their CDL classification. An individual who obtained a CDL could operate commercial vehicles both inside and outside of Illinois.

c.      The Illinois Secretary of State managed the CDL application process in Illinois, and required individuals who sought CDLs to pass both a written examination and a road test.

d.      The required written examination for a CDL was administered at Illinois Secretary of State facilities located throughout the State of Illinois, including Elk Grove Village, Illinois. The written examination was taken by computer, and applicants were allowed to not only read the questions, but also listen to the questions with headphones provided by the Illinois Secretary of State.

e.       If an individual successfully completed the written examination, that person received a temporary paper copy of a Commercial Learner's Permit ("CLP") on the same day. The CLP allowed that individual to operate a commercial vehicle in the presence and supervision of a CDL holder of the same classification.

f.       After a 14-day waiting period, an individual with a CLP could complete the mandated road test. If an individual successfully completed the road test, they received a paper copy of a CDL on the same date, and later received an official CDL that the Illinois Secretary of State sent via United States mail.

2.       Beginning in or about 2019, and continuing until December 2022, in the Northern District of Illinois, Eastern Division, and elsewhere,

MYKOLA DATKUN,

defendant herein, together with others known and unknown, did knowingly and intentionally conspire to cause the production of identification documents, namely, Illinois commercial learner's permits and commercial driver's licenses, knowing that such documents were produced without lawful authority, in a manner in and affecting interstate commerce, and transported in the mail in the course of their production and transfer, in violation Title 18, United States Code, Section 1028(a)(1).

3.       It was part of the conspiracy that defendant MYKOLA DATKUN agreed with co-conspirators known and unknown to help individuals cheat on the written Illinois CDL examination, so that the individuals would pass the written examination and receive CLPs and CDLs from the Illinois Secretary of State.

2

4.      It was further part of the conspiracy that defendant MYKOLA DATKUN directed individuals seeking to cheat on the CDL examination to his company's location in Island Lake, Illinois, where DATKUN and co-conspirators known and unknown agreed to and did provide those individuals with an earpiece, which was synched to the individual's phone, and a microphone receiver, which was connected to the individual's phone through a wire that placed the microphone receiver near the individual's shirt collar.

5.      It was further part of the conspiracy that defendant MYKOLA DATKUN and co-conspirators known and unknown, after wiring up individuals seeking to cheat on the CDL examination, agreed to and did direct the individuals to Illinois Secretary of State facilities to take the written examination, including the Illinois Secretary of State facility in Elk Grove Village, Illinois.

6.      It was further part of the conspiracy that defendant MYKOLA DATKUN and co-conspirators known and unknown agreed to and did provide individuals seeking to cheat on the Illinois CDL examination with a phone number for them to call when they arrived at the Illinois Secretary of State facility to take the CDL examination.

7.      It was further part of the conspiracy that defendant MYKOLA DATKUN and co-conspirators known and unknown agreed to and did receive calls from individuals when they arrived at Illinois Secretary State facilities, and communicated with those individuals via the earpiece and microphone receiver throughout the period when the individual was taking the written CDL examination.

8.      It was further part of the conspiracy that defendant MYKOLA DATKUN and co-conspirators known and unknown agreed to and did direct individuals seeking to cheat on the written CDL examination to take the audio version of the test, and to place the headphones provided by the testing facility around their shirt collar, where the microphone receiver was concealed, so that defendant DATKUN and co-conspirators known and unknown could hear the questions on the examination in real time.

9.      It was further part of the conspiracy that defendant MYKOLA DATKUN and co-conspirators known and unknown agreed to and did listen to the questions from the CDL examination using the microphone receiver, and agreed to and did relay via the earpiece the answers to the questions in real time to the individual taking the examination.

10.      It was further part of the conspiracy that defendant MYKOLA DATKUN and co-conspirators known and unknown agreed to and did charge and collect at least $500 from each individual they helped cheat on the Illinois CDL examination.

11.      It was further part of the conspiracy that defendant MYKOLA DATKUN and co-conspirators known and unknown, by agreeing to help individuals cheat on the Illinois CDL examination, caused individuals to obtain, and the Illinois Secretary of State to issue, CLPs and later CDLs without lawful authority, because those individuals had cheated in order to pass the written examination.

12.     It was further part of the conspiracy that the conspirators would and did conceal and hide, and cause to be concealed and hidden, the purposes of the acts done in furtherance of the conspiracy.

All in violation of Title 18, United States Code, Section 1028(f).

CHRISTINE O'NEILL

Digitally signed by CHRISTINE O'NEILL
Date: 2023.08.31 21:41:50 -05'00'

Signed by Christine O'Neill on behalf of the
ACTING UNITED STATES ATTORNEY